UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATRINA JENNINGS, on behalf of          )
herself and all others similarly situated,   )
                                        )
     v.          Plaintiff,   )    Case No. 18-cv-01413
                                        )
TRUNKETT & TRUNKETT, P.C.;              )
                                        )
           Defendant.   )

## DEFENDANT, TRUNKETT & TRUNKETT'S MOTION
## TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant, Trunkett & Trunkett, P.C. ("T & T"), by its attorneys, pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 12(g), hereby moves for dismissal of the plaintiff, Katrina Jennings', Class Action Complaint with prejudice. In support of this motion, T & T submits herewith the attached memorandum of law. Prior to filing this motion, counsel for T & T complied with this Court's Standing Order summarizing all legal and factual issues and setting forth supporting authorities in an attempt to resolve the issues therein, which has not been successful.

WHEREFORE, Defendant, Trunkett & Trunkett, P.C., respectfully requests entry of an Order dismissing plaintiff, Katrina Jennings', Class Action Complaint with prejudice, awarding T & T its costs incurred in this action, and providing any further relief this Court deems just and appropriate.

Respectfully submitted,

TRUNKETT & TRUNKETT, P.C.

James J. Sipchen
Thomas V.P. Draths
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive; Suite 2500
Chicago, Illinois 60606-4673
(312) 346-1973
jsipchen@pretzel-stouffer.com

By: /s/James J. Sipchen
     One of its attorneys

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATRINA JENNINGS, on behalf of<br>herself and all others similarly situated, | ) | |
| | ) | |
| | ) | |
| v.                          Plaintiff, | ) | Case No. 18-cv-01413 |
| | ) | |
| TRUNKETT & TRUNKETT, P.C.; | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT, TRUNKETT & TRUNKETT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant, Trunkett & Trunkett, P.C. ("T & T"), by its attorneys, pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 12(g), hereby submits this memorandum of law in support of its motion to dismiss the plaintiff, Katrina Jennings', Class Action Complaint ("Complaint").

### INTRODUCTION

The plaintiff dresses up as a Fair Debt Collection Practices Act ("FDCPA") lawsuit what is really nothing more than an impermissible collateral attack on a prior judgment entered against her in a state court collection proceeding. As such, the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. Additionally, the plaintiff's claims are barred by *res judicata*. Finally, each of plaintiff's claims for violation of §§ 1692e and f of the FDCPA fail to state a cause of action because they are foreclosed by the exhibits referenced in plaintiff's very own pleadings; not to mention well-established case law.

### BACKGROUND

On October 24, 2017, Maroon Financial Credit Union ("MFCU") filed a lawsuit in the Circuit Court of Cook County, Illinois against Katrina Jennings ("Jennings") to collect amounts due and owing under a Loan Agreement that Jennings had entered into with MFCU (the "State Court

Action"). (Doc. 1, ¶ 10). MFCU was represented in the State Court Action by the law firm of Trunkett & Trunkett, P.C. ("T & T"). (Id., ¶¶ 4, 9, 10). Jennings is the plaintiff in this action. (Id., ¶ 3).

Jennings fails to attach a complete copy of the Complaint T & T filed in the State Court Action (the "State Court Complaint") to her pleadings in this case, so a complete copy is attached to this motion as Exhibit A.[1] In the State Court Action, T & T alleged that pursuant to the Loan Agreement, MFCU loaned money to Jennings and Jennings had refused to repay the loan in accordance with the terms of the agreement. (Ex. A, p. 1, ¶ 4). Specifically, T & T alleged that principal, interest, and attorneys' fees were presently due MFCU in the amounts of $2,818.18, $14.352, and $929.99, respectively, which totaled $3,762.52. (Id., p. 2, ¶ 6). MFCU prayed for entry of judgment in its favor in this amount plus costs. (Id., prayer for relief).

MFCU further alleged in the State Court Action that pursuant to the Loan Agreement, Jennings "agreed to pay reasonable attorneys' fees," and specifically, that she had "agreed to pay MFCU 33% of the balance collected, which agreement pursuant to 205 ILCS 305/46 is presumed *prima facie* reasonable." (Ex. A, p. 1, ¶ 5). Indeed, the Loan Agreement that Jennings signed and was attached as an exhibit to the State Court Complaint states:

> Collection Costs:
> You promise to pay, subject to applicable law, all costs of collecting what you owe under this Agreement and all costs of realizing on any security for the Plan, including court costs, collection agency fees and reasonable attorneys fees. We may enter into a contingent or hourly fee arrangement with an attorney or collection agency and you agree that such an agreement is reasonable . . . (Ex. A, p. 5).

---

[1] As explained later in the Argument section of this brief, this Court may consider this Exhibit on a Rule 12(b)(6) motion because it is referenced in Jennings' Complaint and is central to her claims. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Jennings never appeared in the State Court Action, and as a result, a default judgment was entered against her on February 21, 2018 in the amount of $3,182.53 with costs. (Trial Call Order, attached as Ex. B). Two days later, Jennings filed this action against T & T alleging that the State Court Complaint and Summons violated the FDCPA. (Doc. 1). Specifically, Jennings claims that T & T violated §§ 1692e, e(2), and e(10) of the FDCPA because the Summons listed the plaintiff as "Maroon Financial C" instead of its full name, "Maroon Financial Credit Union." (Id., ¶ 60).

Jennings claims that the Summons that was served with the State Court Complaint was "misleading" as to the identity of the creditor even though the State Court Complaint: (1) named "Maroon Financial Credit Union" as the plaintiff and sought relief on its behalf; (2) specifically identified "Maroon Financial Credit Union" as the "Creditor" in a Notice attached to the pleadings; and (3) attached as an exhibit the copy of the Loan Agreement that Jennings signed which names "Maroon Financial Credit Union" as the creditor. (Ex. A, pp. 1, 3; 4-13).

Jennings also contends that T & T violated §§ 1692e(5) and 1692f(1) of the FDCPA by it by stating in the State Court Complaint that attorneys fees were "presently due" because the court had not yet awarded such fees. (Doc. 1, ¶¶ 61-62). However, T & T alleged in the body of the Complaint that it had a contingency agreement with MFCU to pay as attorneys fees 33% of the balance *collected* pursuant to 205 ILCS 305/46. (Ex. A, p.1, ¶4). Moreover, T & T attached a copy of the Loan Agreement to the State Court Complaint in which Jennings agreed to pay for such attorneys' fees in any action to collect amounts owed under the Agreement. (Id., p. 5).

Finally, Jennings alleges that T & T violated §1692e(10) of the FDCPA by attaching a Notice to the State Court Complaint that allegedly stated there was a judgment against her. (Doc. 1, ¶ 63). The Notice does not state anything of the sort. Its actual language is as follows:

3

IF YOU NOTIFY US IN WRITING WITHIN THIRTY (30) DAYS AFTER
RECEIPT OF THIS NOTICE THAT THE DEBT REFERRED TO IN THE
ATTACHED COMMUNICATION, OR ANY PORTION THEREOF, IS
DISPUTED, WE WILL OBTAIN VERIFICATION OF THE DEBT **_OR_** A COPY
OF THE JUDGMENT AGAINST YOU AND A COPY OF SUCH VERIFICATION
**_OR_** JUDGMENT WILL BE SENT TO YOU BY US. (Id., ¶ 45) (emphasis added).

## ARGUMENT

**I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1).**

**A. Legal Standard.**

A motion brought pursuant to Fed.R.Civ.P. 12(b)(1) challenges the subject matter jurisdiction

of the court. *See,* Fed.R.Civ.P. 12(b)(1). Federal courts must resolve jurisdictional issues before

proceeding to the merits of the case. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). As such,

the Court is required to decide T & T's Rule 12(b)(1) motion to dismiss before addressing its Rule

12(b)(6) motion. *Olague v. Village of Bensenville*, 1997 U.S. Dist. LEXIS 8539, * 4 (N.D. Ill.).

There are two types of Rule 12(b)(1) jurisdictional challenges: those that attack the

sufficiency of the allegations and those that attack the factual basis for jurisdiction. *Apex Digital,*

*Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). A challenge to jurisdiction under

*Rooker-Feldman* is considered a factual attack to subject matter jurisdiction. *Flores v. Village of*

*Bensenville*, 2001 U.S. Dist. LEXIS 13953, * 6-7 (N.D. Ill.). In ruling on a factual attack, the Court

may properly look beyond the jurisdictional allegations of the complaint to determine whether in fact

subject matter jurisdiction exists. *United Transport v. Gateway Western Railway Co.*, 78 F.3d 1208,

1210 (7th Cir. 1996). If the defendant submits evidence that casts doubt on the Court's jurisdiction,

the "presumption of correctness" usually accorded to jurisdictional allegations disappears.

*Saperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999). In the end, the plaintiff bears the burden of

4

establishing the existence of subject matter jurisdiction by competent proof. *Id*.

**B.      Rooker-Feldman Precludes Jurisdiction Over Plaintiff's Claims.**

The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Commonwealth Plaza Condo. Assoc. v. City of Chicago*, 693 F.3d 743, 745 (7th Cir. 2012). The doctrine, which is a jurisdictional limitation, "prevents lower federal courts from reviewing state-court judgments, over which only the United States Supreme Court has federal appellate jurisdiction." *Id*. *Rooker-Feldman* applies when the state court's judgment is the source of the injury of which the plaintiffs complain in federal court. *Harold v. Steele*, 773 F.3d 884, 885 (7th Cir. 2014). It does not matter that the state court judgment might be erroneous or even unconstitutional. *Commonwealth Plaza Condo. Assoc.*, 693 F.3d at 745.

*Rooker-Feldman* also prohibits indirect attempts to undermine state court decisions. The Seventh Circuit has repeatedly held that even where a federal plaintiff's claims "do not on their face require review of a state court's decision," *Rooker-Feldman* still applies if those claims are "inextricably intertwined with a state-court judgment, except where the plaintiff lacked a reasonable opportunity to present those claims in state court." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). The *Rooker-Feldman* doctrine has often been utilized to bar federal suits seeking to recover on a theory that a debt collector made false statements during state litigation. *Harold*, 773 F.3d at 884. For example, in *Harold*, the court held that misstatements about a creditor's identity in a state court collection proceeding were "inextricably intertwined" with the judgment entered against the debtor in that proceeding. *Id*. at 885.

Similarly, in *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008), the Seventh

5

Circuit held that *Rooker-Feldman* barred the plaintiffs' FDCPA claim that a debt collector made false misrepresentations in a state court lawsuit that it was entitled to recover attorneys' fees. In doing so, the court rejected plaintiffs' argument that the relief sought was "independent" from the state court judgment because it sought to remedy the defendant's representations and requests concerning attorney fees that preceded entry of the state court judgment. *Id*. The court explained that the plaintiffs' claims were inextricably intertwined with the state court's judgment, despite the fact that the allegedly unlawful actions occurred prior to that judgment, because "[w]e could not determine that defendants' representations ... related to attorney fees violated the law without determining that the state court erred by issuing judgments granting the attorney fees." *Id*.

The court in *Kelly* also found that plaintiffs had a "reasonable opportunity" to raise their FDCPA claims in state court even if it required transfer of the collection case to a different division. *Kelly*, 548 F.3d at 606-07. The "reasonable opportunity" inquiry focuses not on ripeness, but on difficulties caused by factors independent of the actions of the opposing parties that precluded a plaintiff from bringing federal claims in state court, such as state court rules or procedures. *Jakupovic*, 850 F.3d at 904. There are no such obstacles to bringing an FDCPA claim in state court. *Byrd v. Homecomings Financial Network*, 407 F.Supp.2d 937, 943 (N.D. Ill. 2005) (noting that "reasonable opportunity" exists to bring a FDCPA claim in state court since state and federal courts have concurrent jurisdiction over FDCPA claims).

Just as in *Kelly*, Jennings alleges in this case that T & T made false statements in a state court lawsuit that Jennings owed attorneys' fees. Also just as in *Kelly*, the state court has entered judgment against the Jennings and awarded fees (although not as much as the amount sought). Under *Kelly*, Jennings' FDCPA suit that alleges that the State Court Action misrepresented the name

of the plaintiff and that attorneys' fees were owed requires this Court to undo the judgment entered against her in the State Court Action. As such, *Rooker-Feldman* bars her claims.

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6).

### A.   Legal Standard.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Fed.R.Civ.P. 12(b)(6); *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). The purpose of such a motion is to "streamline litigation by dispensing with needless discovery and fact-finding," *Neitzke v. Williams*, 109 S.Ct. 1827, 1832 (1989), and to allow the court to determine "at the outset of the litigation, before costly discovery is undertaken, whether the plaintiff has any tenable theory or basis of suit, so that if he does not, the case can be got rid of immediately without clogging the court's docket and imposing needless expense on the defendant." *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999).

As explained by the United States Supreme Court, in order to withstand a motion to dismiss a complaint must provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Id.* at 1965. In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), the Supreme Court held that courts "are not bound to accept as true a legal conclusion couched as a factual assertion." *Iqbal* explained that the analysis of whether a claim has been properly pled should begin with the court identifying, and then disregarding, the pleader's conclusory assertions which are not entitled to a presumption of truth. *Iqbal*, 129 S.Ct. at 1950. This will enable the court to determine

if the "well-pleaded factual allegations . . . plausibly give rise to an entitlement of relief." *Id.*

Additionally, district courts may look to exhibits attached to a complaint in deciding a motion to dismiss under Rule 12(b)(6). Fed.R.Civ.P. 10(c); *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). Where plaintiff's factual allegations in the body of the complaint are contradicted by the attached written exhibits, the exhibits trump the allegations. *Id*. In this regard, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he is not entitled to judgment." *In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992).

Documents attached to a motion to dismiss are also considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). On a Rule 12(b)(6) motion, a court may also take judicial notice of matters outside the pleadings that are of public record, including prior court filings. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

**B.     All Of Plaintiff's Claims Are Barred By Res Judicata.**

Under 28 U.S.C. § 1738, a federal court must apply the *res judicata* law of Illinois in determining the preclusive effect of a judgment rendered by an Illinois court. *Hagee v. City of Evanston*, 729 F.2d 510, 512 (7th Cir. 1984). Illinois requires three elements for *res judicata* to apply: (1) identity of parties and their privies in the two suits; (2) identity of cause of action in the prior and current suit; and (3) a final judgment on the merits in the prior suit. *4901 Corporation v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000). The purpose of *res judicata* is to promote judicial economy by requiring the parties to litigate, in one case, all rights arising out of the same set of operative facts. *Chicago Title Land Trust Co. v. Potash Corp.*, 664 F.3d 1075, 1079 (7th Cir. 2011). A court may dismiss a matter based on *res judicata* pursuant to Rule 12(b)(6) where, as here, the

8

facts establishing the defense are definitively ascertainable from the allegations of the complaint, the documents incorporated therein, matters of public record, and other matters subject to judicial notice. *U.S. Bank v. JKM Mundelein, LLC*, 2015 U.S. Dist. LEXIS 61619, * 8 (N.D. Ill.).

With respect to the first element, there is an identity of parties and their privies in these proceedings and the State Court Action. Jennings, who is the plaintiff in this case, was the defendant in the State Court Action. T & T acted as the attorneys representing MFCU who was the plaintiff in the State Court Action, and therefore is in privity with the credit union for *res judicata* purposes. *See, Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235, n. 6 (7th Cir. 1986) (holding that a bank and the attorneys it hired to pursue a mortgage foreclosure judgment were in privity for purposes of *res judicata*); *Langone v. Schad, Diamond and Shedden, P.C.*, 406 Ill.App.3d 820, 832, 943 N.E.2d 673 (1st Dist. 2010) (attorneys are in privity with clients for purposes of *res judicata*).

The second element is satisfied since there is an identity of causes of action between the instant case and the State Court Action. *Res judicata* precludes not only claims that were brought in a prior action, but those that *could have been brought* as well. *4901 Corporation*, 220 F.3d at 530 (emphasis added). According to the Illinois Supreme Court, causes of action are identical "if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id*; *citing, River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 311, 703 N.E.2d 883 (1998). Further, "[f]or purposes of determining the *res judicata* effect of a judgment, a 'cause of action' is not limited to those issues that were or might have been offered to sustain the claim; it is also deemed to comprise all defenses that were or might have been offered." *Henry*, 808 F.2d at 1233. As the Seventh Circuit stated in *Henry*:

> *[R]es judicata* bars a party from subsequently raising claims based on facts which

9

could have constituted a defense or counterclaim to a prior proceeding if the successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action. *Henry*, 808 F.2d at 1232.

In *Byrd*, this Court applied *res judicata* to bar a plaintiff's claim that the company servicing her mortgage violated the FDCPA by declaring her in default on her mortgage, pursuing foreclosure proceedings, and obtaining a judgment resulting in the sale of her property. *Byrd*, 407 F.Supp.2d at 945. The Court held that the FDCPA claim involved the same transaction as the foreclosure suit because the basis for the FDCPA claim was the lender's attempt to recover money owed on plaintiff's mortgage through the foreclosure suit itself. *Id*. The court distinguished the case before it from others where *res judicata* was held not to apply because the FDCPA claim was not based upon the state court proceeding to attach the debt, but rather, involved efforts at debt collection that occurred *before* suit was filed. *Id*. Just as in *Byrd*, Jennings' FDCPA claims in the instant case stem from the allegations in the State Court Complaint itself.

The third element – a final judgment on the merits in the prior suit – has also been met. Under Illinois law, a judgment is deemed final for purposes of *res judicata* if it terminates litigation on the merits so that the only issue remaining is proceeding with its execution. *SDS Partners, Inc. v. Cramer*, 305 Ill.App.3d 893, 896 , 713 N.E.2d 239 (4th Dist. 1999). The default judgment entered in the State Court Action is a final judgment on the merits for *res judicata* purposes. *Window World of Chicagoland, LLC v. Window World, Inc.*, 2015 U.S. Dist. LEXIS 60111, * 13 (N.D. Ill.).

**C.      Each Of Plaintiff's Claims Fail To State A Cause Of Action For A Number Of Additional Independent Reasons.**

Jennings' Complaint alleges a number of violations of §§ 1692e and f of the FDCPA. To establish a violation of § 1692e, a plaintiff must show that the statement made by the debt collector

10

would mislead or deceive the unsophisticated, but reasonable, consumer. *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). In this regard, the Seventh Circuit has made it clear that while "the unsophisticated consumer may be uninformed, naïve, and trusting, she is not a dimwit, has rudimentary knowledge about the financial world, and is capable of making basic logical deductions and inferences." *Id*.

The "unsophisticated consumer" standard is an objective one of reasonableness, and a court will disregard "unrealistic, peculiar, bizarre, and idiosyncratic interpretations of communications from a debt collector." *Petit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). The FDCPA protects the unsophisticated consumer, but not the irrational one. *Id*. at 1062. Accordingly, a court must read a communication from a debt collector (in this case, a state court complaint) in its entirety and not seek out isolated words or phrases that absent context, might confuse. *Seplak v. IMBS, Inc.*, 1999 U.S. Dist. LEXIS 2106, * 9 (N.D. Ill.); *see also, Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 595 (6th Cir. 2009) (assessing § 1692e claim and noting that lower "court properly assessed the [underlying] complaint's meaning as read in its entirety").

The FDCPA also provides in § 1692f that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The same "unsophisticated consumer" standard applies to evaluating claims under § 1692f. *Turner v. J.V.D.B. & Assocs., Inc*, 330 F.3d 991, 998 (7th Cir. 2003). In short, if not even "a significant fraction of the population would be misled" by the communication at issue, then dismissal is required. *Gruber v. Creditors' Prot. Service, Inc.*, 742 F.3d 271, 274 (7th Cir. 2014).

**1.     T & T did not violate the FDCPA by failing to type the full name of the plaintiff on the summons.**

Jennings' first claim is that T & T violated §§ 1692e, e(2) and e(10) of the FDCPA by serving a State Court Complaint which lists the plaintiff as "Maroon Financial Credit Union" in the Complaint, but "Maroon Financial C" on the Summons. (Doc. 1, ¶ 60). However, technical false statements from a debt collector do not give rise to FDCPA liability - the statement must actually mislead the unsophisticated consumer. *Wahl*, 556 F.3d at 646. In this regard, when "no reasonable person, however unsophisticated, could construe the wording of the communication in a manner that violates the FDCPA, dismissal of the claim is appropriate. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 637 (7th Cir. 2012).

Jennings argument that the Summons was "confusing" engages in precisely the type of "fantastic conjecture" that the Seventh Circuit prohibits. *See, White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000). No reasonable person, no matter how unsophisticated, could possibly read the Summons and Complaint and be "confused" as to the identity of the creditor who is acting as the plaintiff in the State Court Action. Ironically, if there is any confusion, it has been caused by Jennings herself in failing to attach the *complete* State Court Complaint to her pleadings in this case.

While Jennings characterizes the State Court Complaint and Summons as listing two separate entities, she does not identify the existence of any entity in existence bearing the name "Maroon Financial C" that could be confused with the entity "Maroon Financial Credit Union" named in the caption of the State Court Complaint. Additionally, it is clear that the State Court Complaint (1) named "Maroon Financial Credit Union" as the plaintiff and sought relief on its behalf; (2) specifically identified "Maroon Financial Credit Union" as the "Creditor" in a Notice attached to the

pleadings; and (3) attached as an exhibit a copy of the Loan Agreement that names "Maroon Financial Credit Union" as the creditor. (Ex. A, pp. 1, 3; 4-13). There is simply no possibility for confusion when the *complete* State Court Complaint is read in its entirety.

Moreover, under § 1692e, a statement cannot mislead unless it is material, so a false but non-material statement is not actionable. *Hahn v. Triumph Partnerships, LLC*, 557 F.3d 755, 756 (7th Cir. 2009). Numerous courts have held that failure to use the full name of a creditor in a communication is not material because it could not have any practical impact on a consumer's rights or decision making process. *Eul v. Transworld*, 2017 U.S. Dist. LEXIS 47505, * 102-05 (N.D. Ill.); *Leonard v. Zwicker & Assoc., P.C.*, 2016 U.S. Dist. LEXIS 173669, * 11 (S.D. Fla.); *Hammett v. Allianceone Rec. Mgmt.*, 2011 U.S. Dist. LEXIS 97330, * 13-15 (E.D. Pa.). That is especially true where, as here, a reading of the complete document discloses the full name of the creditor.

### 2. T & T did not violate the FDCPA by seeking attorneys' fees in the State Court Action.

Next, Jennings asserts that T & T violated §§ 1692e(5) and 1691f of the FDCPA by stating in the Complaint that attorneys fees were presently due prior to fees being awarded by the court. (Doc. 1, ¶¶ 61-62). As a threshold matter, § 1692e(5) does not apply because a state court lawsuit is actual action taken; not "the threat to take any action that cannot legally be taken or that is not intended to be taken" that would give rise to liability under § 1692e(5). *Eul*, 2017 U.S. Dist. LEXIS 47505 at * 51-52. Additionally, the Seventh Circuit has repeatedly held that § 1692f only applies to non-judicial action and that state court proceedings are outside the scope of that particular section of the FDCPA. *Bentrund v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874-75 (7th Cir. 2015); *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007).

T & T's claim for attorneys' fees in the State Court Complaint also did not misrepresent the amount or status of Jennings debt in violation of any other provisions of § 1692e. The Seventh Circuit has flatly rejected the idea that a dunning letter's demand for payment of attorneys fees prior to adjudication of those fees by a court misrepresents the amount of the debt when the underlying contractual relationship between the debtor and creditor provided for the recovery of such fees. *Singer v. Pierce & Assoc., P.C.*, 383 F.3d 596, 598 (7th Cir. 2004).

The same law that applies to dunning letters applies to allegations in a state court collection lawsuit. Allegations in a complaint that a debtor owes attorneys' fees do not violate the FDCPA where they are based upon an agreement between the plaintiff and defendant that expressly authorizes the recovery of such fees. *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234-35 (4th Cir. 2015); *James v. Olympus Servicing, L.P.*, 2003 U.S. Dist. LEXIS 7468 * 5-7 (N.D. Ill.); *McNair v. Maxwell & Morgan, P.C.*, 142 F.Supp.3d 859, 869-70 (D. Ariz. 2015). Here, the attorneys' fees claimed as presently due in the State Court Complaint were expressly authorized by the Loan Agreement attached to the Complaint. (Ex. A. p. 5). As alleged in the State Court Complaint, they were also authorized by Illinois statute, 205 ILCS 305/46. (Id., p. 1, ¶ 5).

### 3.   T & T did not violate the FDCPA by providing a notice in the State Court Action that tracks the language of § 1962g(a)(4) of the statute.

Plaintiff's final allegation is that T & T violated § 1692e(10) of the FDCPA because it falsely stated in a Notice attached to the State Court Complaint that "there was a judgment against [Jennings] in the State Action." (Doc. 1, ¶ 63). The Notice says nothing of the sort. Instead, it advises Jennings if she notifies us in writing within 30 days of receipt of the notice that she disputes the debt, T & T will obtain verification or the debt *or* a copy of the judgment against her. (Id., ¶ 45).

The Notice attached to the State Court Complaint tracks verbatim the language in § 1692g(a)(4) of the FDCPA. *See,* 15 U.S.C. § 1692g(a)(4). When a notice tracks the language of the FDCPA, it cannot be false, misleading, or deceptive in violation of the statute. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 484 (7th Cir.1997). Indeed, in *Moore v. Ingram & Assoc., Inc.*, 805 F.Supp. 7, 9 (D.S.C. 1992), which was cited with approval in *Jang*, the plaintiff alleged that the exact same language T & T used in its Notice in the State Court Complaint violated § 1692e because it implied there was a judgment against the debtor when no judgment existed. *Id.* The court rejected this argument as the language used in the letter mirrored the language required by § 1692g(a)(4), and the offer to provide a copy of the judgment was clearly provided in the alternative to obtaining verification of the debt, which did not imply that a judgment actually existed. *Id.* Pursuant to *Jang* and *Moore*, Jennings' claim for violation of § 1692e(10) should be dismissed.

## CONCLUSION

This Court should reject Jennings improper collateral attack on the judgment in the State Court Action and bar her claim under *Rooker-Feldman*, or alternatively, *res judicata*. Further, Jennings Complaint does not state a cause of action against T & T. The State Court Complaint complied with the FDCPA in all respects. Jennings claims should be dismissed with prejudice.

Respectfully submitted,

TRUNKETT & TRUNKETT, P.C.

James J. Sipchen
Thomas V.P. Draths
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive; Suite 2500
Chicago, Illinois 60606-4673
(312) 346-1973
jsipchen@pretzel-stouffer.com

By: /s/James J. Sipchen
     One of its attorneys

15

# EXHIBIT A

054924

ELECTRONICALLY FILED
10/24/2017 3:13 PM
2017-M6-011316
ROOM: 0209
PAGE 1 of 13
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
MUNICIPAL DIVISION
CLERK DOROTHY BROWN

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT 6TH DISTRICT

THIS DOCUMENT IS AN ATTEMPT TO COLLECT A DEBT ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

MAROON FINANCIAL CREDIT UNION                )
,                                            )
            Plaintiff,                        )
                                             )  NO.
                                             )
        vs.                                  )  AMOUNT CLAIMED: $3,762.52
                                             )
                                             )  RETURN DATE:
KATRINA S JENNINGS,                          )
                                        )    )
                                             )
                                             )
        Defendant(s).                        )

### COMPLAINT

Now comes the Plaintiff, by its attorneys, TRUNKETT &
TRUNKETT, P.C., and complaining of the Defendant(s), state(s) as
follows:

   1.   Attached hereto is a NOTICE from a Debt Collector.

   2.   Plaintiff is a duly chartered credit union.

   3.   Defendant(s) executed in favor of the plaintiff a
certain "credit agreement"/signature card ("agreement"), a true and
correct copy of which is attached hereto as Exhibit 1.

   4.   Pursuant to the agreement, plaintiff loaned money to
the defendant(s) and the defendant(s) has/have failed and
refused to repay the loan in accordance with the terms of the
agreement.

   5.   Pursuant to the agreement, defendant(s) agreed to pay
reasonable attorney's fees. Plaintiff has agreed to pay its
attorneys 33% of the balance collected, which agreement
pursuant to 205 ILCS 305/46, is presumed *prima facie*



EXHIBIT

A

reasonable.

6. There are presently due from the defendant(s) to the plaintiff the following sums:

Principal:...........................$2,818.18

Interest at .1549 from 09/14/17
as of complaint filing date.........$14.352

Attorney's fees.....................$929.99

TOTAL:............................. $3,762.52

7. That no portion of the amount above stated includes unearned interest whereby the defendant would be entitled to a rebate.

WHEREFORE, plaintiff prays that judgment be entered in its favor and against the defendant(s) in the amount of $3,762.52 and costs of this action.

TRUNKETT & TRUNKETT, P.C.

BY: _____

ELECTRONICALLY FILED
10/24/2017 3:13 PM
2017-M6-011316
PAGE 2 of 13

VERIFICATION

Under penalties provided by law, pursuant to sec. 1-109 of the Code of Civil Procedure, the undersigned certifies that the statments set forth in this instrument are true and correct and as to such matters, the undersigned certifies that he believes the same to be true.

_____

TRUNKETT & TRUNKETT, P.C.
20 N. WACKER DRIVE #1434
CHICAGO,IL 60606
312.324.3101
COOK #45853
DUPAGE 241222  dpg aprvl#89CS44
IL.BAR #6188221, 6306741, 6316656
email courtnotices@trunkettlawpc.com

NOTICE

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE

Amount of Debt: $3,762.52

Creditor: MAROON FINANCIAL CREDIT UNION

1.   UNLESS YOU, WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS NOTICE,
DISPUTE THE VALIDITY OF THE DEBT REFERRED TO IN THE ATTACHED COMMUNIC-
ATION, OR ANY PORTION THEREOF, THE DEBT WILL BE ASSUMED TO BE VALID
BY US.

2.   IF YOU NOTIFY US IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIPT
OF THIS NOTICE THAT THE DEBT REFERRED TO IN THE ATTACHED COMMUNICATION,
OR ANY PORTION THEREOF, IS DISPUTED, WE WILL OBTAIN VERIFICATION OF THE
DEBT OR A COPY OF THE JUDGMENT AGAINST YOU AND A COPY OF SUCH VERIFIC-
ATION OR JUDGMENT WILL BE SENT TO YOU BY US.

3.   UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS OF YOUR RECEIPT
OF THIS NOTICE, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE
ORIGINAL CREDITOR, IF SUCH CREDITOR IS DIFFERENT FROM THE CURRENT
CREDITOR.

4.   THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE AND TO COLLECT THIS DEBT.

5.   SPECIAL NOTE: IF YOU ARE RECEIVING THIS NOTICE IN CONNECTION WITH
A LAWSUIT, THE FOLLOWING PERTAINS TO YOUR DEALINGS WITH TRUNKETT &
TRUNKETT, P.C. AND ITS ATTORNEYS AS DEBT COLLECTORS. IT DOES NOT AFFECT
YOUR DEALINGS WITH THE COURT, AND IN PARTICULAR IT DOES NOT CHANGE THE
TIME AT WHICH YOU MUST ANSWER THE COMPLAINT. THE SUMMONS IS A COMMAND
FROM THE COURT, NOT FROM TRUNKETT & TRUNKETT, P.C. OR ITS ATTORNEYS, AND
YOU MUST FOLLOW ITS INSTRUCTIONS EVEN IF YOU DISPUTE THE VALIDITY OR
AMOUNT OF THE DEBT. THE ADVICE CONTAINED HEREIN DOES NOT AFFECT
TRUNKETT & TRUNKETT, P.C. OR ITS ATTORNEYS RELATIONS WITH THE COURT. AS
LAWYERS, WE MAY FILE PAPERS IN THE SUIT ACCORDING TO THE COURT'S RULES
AND THE JUDGE'S INSTRUCTIONS. (Thomas v. Lawfirm of Simpson & Cybak,
7th Cir. 2004).

ELECTRONICALLY FILED
10/24/2017 3:13 PM
2017-M6-011316
PAGE 3 of 13

 **MAROON Financial** CREDIT UNION

5525 C S Ellis Ave
Chicago, Illinois, 60637-1401
Phone:773-702-7179
Fax: 773-702-2903

 **LOANLINER**

## LOAN AND SECURITY AGREEMENTS
## AND DISCLOSURE STATEMENT

| LOAN DATE | LOAN NUMBER | ACCOUNT NUMBER | GROUP POLICY NUMBER | MATURITY DATE |
|---|---|---|---|---|
| 11/20/2015 | 500 | | 012-2220-1 | 12/04/2016 |

| BORROWER 1 | BORROWER 2 |
|---|---|
| NAME AND ADDRESS<br>KATRINA S JENNINGS<br>4532 HEARTLAND DR<br><br>RICHTON PARK IL 60471 | NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) |

### TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit is $ 3325.35 which includes your downpayment of $ |
| 15.49% ~~19.454%~~ | $ 279.02e | $ 3000.00 | $ 3325.35 | |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 11 | $ 277.12 | Monthly 01/04/2016 |
| 1 | $ 277.03 | FINAL PAYMENT 12/04/2016 |

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the credit union. If you get the insurance from us, you will pay$ N/A  N/A

**Late Charge:** If a payment is more than 10 days late, you will be charged $25.00

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

[X] **Assumption:** Someone buying your mobile home cannot assume the remainder of the loan on the original terms.

**Demand:** [ ] This obligation has a demand feature. [ ] All disclosures are based on an assumed maturity of one year.

| Filing Fees | Non-Filing Insurance |
|---|---|
| $ | $ |

**Security:** Collateral securing other loans with the credit union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the credit union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |

Other (Describe)
Pledge of Shares $ _____ in Account No. . _____ $ _____ in Account No. . _____

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

### SIGNATURES

By signing as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign as "Owner of Property" you agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

X _Katrina J._ (SEAL) 11/20/15 DATE | X _____ (SEAL) _____ DATE
BORROWER 1 | BORROWER 2

X _____ (SEAL) _____ DATE | X _____ (SEAL) _____ DATE
[ ] OTHER BORROWER [ ] OWNER OF PROPERTY [ ] WITNESS | [ ] OTHER BORROWER [ ] OWNER OF PROPERTY [ ] WITNESS

PAGE 4 of 13

© CUNA MUTUAL GROUP 1989, 2000, 01, 02, 05, 06, 08, ALL RIGHTS RESERVED

NXX028 (LASER)

Credit Union Maroon Financial Credit Union     Loan No. 500     Acct. No.

Borrower(s) KATRINA S JENNINGS

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of $3000.00 | Amount Given to You Directly $ | Amount Paid on Your Account $ | Prepaid Finance Charge $ 0.00 |
|---|---|---|---|

Amounts Paid to Others on Your Behalf:  (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)

| | | | |
|---|---|---|---|
| $ 3000.00 To KATRINA S JENNINGS | | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |
| $ | To | $ | To |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you," or "your" mean each person who signs this Agreement as a borrower.

**1. PROMISE TO PAY -** You promise to pay $    3000.00    to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is   15.490% per year.

**Collection Costs:**

You promise to pay, subject to applicable law, all costs of collecting what you owe under this Agreement and all costs of realizing on any security for the Plan, including court costs, collection agency fees and reasonable attorney fees. We may enter into a contingent or hourly fee arrangement with an attorney or collection agency and you agree that such an agreement is reasonable. This provision also applies to bankruptcy, appeals or postjudgement proceedings.

**2. PAYMENTS -** You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect credit insurance, we will either include the premium in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.

**3. LOAN PROCEEDS BY MAIL -** If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.

**4. SECURITY FOR LOAN -** This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. A dwelling secures this loan only if it is described in the "Security" section of the Truth in Lending Disclosure for this loan. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal law and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this statutory lien without further notice to you, to the extent permitted by law. **For all borrowers:** You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the credit union now and in the future. The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default. The statutory lien and/or your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT -** You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent (that is, unable to pay your bills and loans as they become due), or if you made any false or misleading statements in your loan application. You will also be in default if something

happens that we believe may seriously affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT -** When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. If we demand immediate payment, you will continue to pay interest at the rate provided for in this Agreement, until what you owe has been repaid. We will also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.

**7. EACH PERSON RESPONSIBLE -** Each person who signs this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE -** If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES -** Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

**12. USE OF ACCOUNT -** You promise to use your account for consumer (personal, family or household) purposes, unless the credit union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**14. OTHER PROVISIONS -**

© CUNA MUTUAL GROUP 1999, 2000, 01, 02, 05, 06, ALL RIGHTS RESERVED

Credit Union Maroon Financial Credit Union      Loan No. 500      Acct. No. ▬▬▬

Borrower(s) KATRINA S JENNINGS

## SECURITY AGREEMENT

In this Agreement all references to "credit union," "we," "our" or "us" mean the credit union whose name appears on this document and anyone to whom the credit union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS** - The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. If the Property is not a dwelling, the security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal residence. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal residence, the Property will secure only this Loan and not other loans or amounts you owe us.

**3. OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property in another state without telling us.

**6. PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's

payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE** - If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.

**8. DEFAULT** - You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will be in default if any property you have given us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it. You will also be in default under this Agreement if the Loan is in default.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT** - When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim.

After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and you will owe us what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**13. NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marked.*
**14. NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**15. OTHER PROVISIONS** -

© CUNA MUTUAL GROUP 1999, 2000, 01, 02, 05, 08, 08, ALL RIGHTS RESERVED      110394.500      NXX0RR (LASER)



MAROON
Financial
CREDIT UNION

**CREDIT INSURANCE**

You can protect your financial future by signing up for voluntary credit insurance below. Enroll by simply indicating your preference in the "Credit Insurance Application" section below. Your credit union will be happy to explain the various insurance options and coverage. The cost is reasonable.

CUNA MUTUAL GROUP
CMFG Life Insurance Company

P.O. Box 391 • 5910 Mineral Point Road
Madison, WI 53701-0391
Phone: 800.356.2644

**CREDIT INSURANCE APPLICATION & SCHEDULE**

"You" or "Your" means the member and the joint insured (if applicable).

Credit insurance is **voluntary and not required** in order to obtain this loan. You may select any insurer of your choice. You can get this insurance only if you check the "yes" box below and sign your name and write in the date. The rate you are charged for the insurance is subject to change. You will receive written notice before any increase goes into effect. You have the right to stop this insurance by notifying your credit union in writing. Your signature below means you agree that:

- If you elect insurance, you authorize the credit union to add the charges for insurance to your loan each month.

- You are eligible for disability insurance only if you are working for wages or profit for 25 hours a week or more on the date of any advance. If you are not, that particular advance will not be insured until you return to work. If you are off work because of temporary layoff, strike or vacation, but soon to resume, you will be considered at work. Are you working for wages or profit for 25 hours a week or more? ☐ Yes ☐ No

- You are eligible for insurance up to the Maximum Age for Insurance. Insurance will stop when you reach that age.

NOTE: THE LIFE AND DISABILITY INSURANCE CONTAINS CERTAIN BENEFIT EXCLUSIONS, INCLUDING A PRE-EXISTING CONDITION EXCLUSION. PLEASE REFER TO YOUR CERTIFICATE FOR DETAILS.

PAGE / of 13

| YOU ELECT THE FOLLOWING INSURANCE COVERAGE(S) | YES | NO | COST PER $100 OF YOUR MONTHLY LOAN BALANCE | COVERED MEMBER |
|---|---|---|---|---|
| Single Credit Disability | X | | $0.200 | KATRINA JENNINGS |
| | | | | |
| Single Credit Life | | X | $0.067 | |
| Joint Credit Life | | X | $0.111 | |

If you are totally disabled for more than **14** days, then the disability benefit will begin with the **15th** day of disability.

| MEMBER | INSURANCE MAXIMUMS | | DISABILITY | LIFE |
|---|---|---|---|---|
| KATRINA S JENNINGS | | | | |
| ACCOUNT NUMBER | MONTHLY TOTAL BENEFIT | | $ 600.00 | N/A |
| 110394.500 | INSURABLE BALANCE PER LOAN ACCOUNT | | $ 30,000.00 | $ 30,000.00 |
| | MAXIMUM AGE FOR INSURANCE | | 66 | 70 |
| SECONDARY BENEFICIARY (If you desire to name one) | | | | |

| DATE 11/20/15 | BORROWER'S DATE OF BIRTH | DATE | CO-BORROWER'S DATE OF BIRTH |
|---|---|---|---|
| SIGNATURE OF BORROWER ELIGIBLE TO BE INSURED | | SIGNATURE OF JOINT INSURED (CO-BORROWER) (Only required if JOINT CREDIT LIFE coverage is selected) | |

*Katrina J*

KATRINA S JENNINGS

APP.B25-0786IL

110394.500

IIL402-e

## Loan Application #20151115100423

## Loan Information

Personal- ~~Personal~~ *Bills*
Loan Purpose

3000.00
Desired Loan Amount

12 months
Desired Loan Term (in months)

<u>Top of Application</u>

## Applicant Information

### Personal Information

Katrina
First Name

S
Middle Initial

Jennings
Last Name

Home Phone

7737021000
Work Phone

Cell Phone Number

Date of Birth

Ktrjnnn70@yahoo.com
E-Mail Address

Doyle
Mother's Maiden Name

Social Security Number

J55251770649 IL
Driver's License Number

**Current Address:**
4532 Heartland Drive
Richton Park, Il 60471

**Previous Address:**

,

2 years
Years/Months at Above Address

Years/Months at Above Address

Rent $890
Payment / Rent

## Employment Information

Registered Nursr
Current Occupation

2
Years in Occupation


Gross Monthly Pay

**Current Employer**
The University of Chicago
Medicine
Employer's Name

**Previous Employer**
St James Hospital
Employer's Name

5841 S Maryland Ave
Chicago, Il 60637
Address

2311 Chicago Rd
Chicago Heights, Il 60411
Address

5 years

2 years
Length At Above Position

Length At Above Position

## Marital Status

Single

## Spousal Information

First Name

Middle Initial

Last Name (If Different From Applicant's)

Current Occupation

Years in Occupation

Gross Monthly Pay

### Current Employer

### Previous Employer

Employer's Name

Employer's Name

Address

Address

Length At Above Position

Length At Above Position

Top of Application

# Joint Applicant Information

## Personal Information

First Name

Middle Initial

Last Name

Home Phone

Work Phone

Cell Phone Number

Date of Birth

E-Mail Address

Mother's Maiden Name

Social Security Number

Driver's License Number

### Current Address:

### Mailing Address (If Different):

Years/Months at Above Address

Years/Months at Above Address

## Employment Information

Current Occupation

Years in Occupation

Gross Monthly Pay

PAGE 9 of 13

**Current Employer**

**Previous Employer**
Employer's Name

,
Address

,
Address

Length At Above Position

Length At Above Position

Top of Application

## Reference (Family or Friend)

Saundra Pegues
Full Name

Sister
Relation

7089572523
Phone Number

**Current Address:**
955 Elder Rd
Homewood, Il 60430

**Mailing Address (If Different):**

,

Top of Application

## Monthly Income Information

### Primary Applicant

▬▬▬▬
Net Pay
(After taxes and/or deductions)

▬▬▬▬
Gross Pay
(Before taxes and/or deductions)

St James hospital
▬▬▬
Other Income
(Source and Amount)

Top of Application

## Assets and Debts

### Assets

If you are married, some assets and income may be considered community property, and all debts are considered community obligations. The laws and regulations that pertain to the state in which you reside will determine how the credit union views assets and liabilities listed on this application.

| Financial Institution | Account Type | Account Number | Current Balance | Jointly Owned |
|---|---|---|---|---|
| Bank of America | Checking | 291013113764 | 23.00 | No |
| | | | | No |
| | | | | No |
| | | | | No |
| | | | | No |
| | | | | No |

## Debts

Owed Institution    Debt Description    Account Number    Current Balance     Monthly Payment

## Notable Events

Top of Application

## Collateral and Insurance

Top of Application

PAGE 11 of 13

Maroon Financial Credit Union
5525 S Ellis Ave
Chicago, IL 60637

## MEMBER STATEMENT

**Statement Period**
1/1/2017 - 3/31/2017
**Account Number**



MORTGAGE RATES ARE STILL LOW!
Are you considering the purchase of a new home?
We can pre-approve you for a mortgage loan before you
go shopping for the perfect home. Please call us at
773-702-7179 or go to www.mortgages.maroonfinancial.org
to have a loan officer reach out to you.

KATRINA S. JENNINGS
4532 HEARTLAND DR
RICHTON PARK, IL 60471

ELECTRONICALLY FILED
10/24/2017 3:13 PM
2017-M6-011316
PAGE 12 of 13

### PRIMARY SHARES

| Date | Transaction | Withdrawal | Deposit | Balance |
|---|---|---|---|---|

Beginning Balance: $5.00

You did not perform any transactions during this statement period.

Ending Balance: $5.00

#### Account Statistics

| | | |
|---|---|---|
| Year to Date Dividends Paid: | | $0.00 |

| | Total for this period | Total year-to-date |
|---|---|---|
| Total returned item fees: | $0.00 | $0.00 |
| Total overdraft fees: | $0.00 | $0.00 |

### 00 - CONSOLIDATE BILLS

| Date | Transaction | Disbursement | Payment | Balance |
|---|---|---|---|---|

Beginning Balance: $2818.18

You did not perform any transactions during this statement period.

Ending Balance: $2818.18

#### Account Statistics

| | |
|---|---|
| Year to Date Interest Paid: | $0.00 |
| Annual Percentage Rate (APR): | 14.490% |
| Payment Due Date: | 2/4/2016 |
| Payment Amount Due: | $2818.18 |

Maroon Financial Credit Union
5525 S Ellis Ave
Chicago, IL 60637

## MEMBER STATEMENT

**Statement Period**
4/1/2017 - 6/30/2017
**Account Number** 



We're Celebrating our 60th Anniversary!
Maroon Financial Credit Union has been
serving the University of Chicago community
since we opened on June 28, 1957.

KATRINA S. JENNINGS
4532 HEARTLAND DR
RICHTON PARK, IL 60471

ELECTRONICALLY FILED
10/24/2017 3:13 PM
2017-M6-011316
PAGE 13 of 13

### - PRIMARY SHARES

| Date | Transaction | Withdrawal | Deposit | Balance |
|------|-------------|------------|---------|---------|

Beginning Balance: $5.00

You did not perform any transactions during this statement period.

Ending Balance: $5.00

#### Account Statistics

| | | | |
|---|---|---|---|
| Year to Date Dividends Paid: | | $0.00 | |

| | Total for this period | Total year-to-date |
|---|---|---|
| Total returned item fees: | $0.00 | $0.00 |
| Total overdraft fees: | $0.00 | $0.00 |

### 600 - CONSOLIDATE BILLS

| Date | Transaction | Disbursement | Payment | Balance |
|------|-------------|--------------|---------|---------|

Beginning Balance: $2818.18

You did not perform any transactions during this statement period.

Ending Balance: $2818.18

#### Account Statistics

| | |
|---|---|
| Payment Due Date: | 2/4/2016 |
| Payment Amount Due: | $2818.18 |

# EXHIBIT B

ORDER/TRIAL CALL

054924

IN THE CIRCUIT COURT OF COOK COUNTY

MAROON FINANCIAL CREDIT UNION )
                                )
                   Plaintiff,   )        LINE NO. 111
                                )
          v.                    )   NO. 17M6011316
                                )
KATRINA S JENNINGS              )
                   Defendant.   )

TRIAL CALL ORDER

Present __Plaintiff __Defendant X Plaintiff Counsel __Defendant's Couns
THIS MATTER having come before the court, the court having juris-
diction and being fully advised,
IT IS HEREBY ORDERED:

4213 ___ Alias Summons to Issue for _____
4292 ___ File Amended Complaint_____
4295 ___ Take and Complete Discovery by_____
4235 ___ File Counterclaim_____
4234 ___ File Appearance/Jury Demand_____
4234 ___ Answer or to otherwise plead within _____days.
4219 ___ Defendant_____is defaulted; cause set for
4247 ___ PROVE-UP on _____,20____ at 9:30a.m./p.m.
4482 ___ Set for STATUS on _____,20____at 9:30 a.m. in Room _____.
4482 ___ Set for TRIAL on _____,20____at 9:30 a.m. in Room _____.
8005 ___ Case Dismissed for Want of Prosecution.
8011 ___ Case Dismissed by Agreement of Parties/No Cost __With or
          _____Without Prejudice
4219 X X-Parte Default Judgment for Plaintiff for $3182.53 vs.
          Katrina Jennings_____,Defendant(s).
4293 X with costs assessed.
8001 ___ Judgment for Plaintiff after trial for $_____ vs.
          _____, Defendant(s).
8002 ___ Judgment for Defendant _____ after trial.
8001 ___ Judgment is entered by agreement for $_____ vs.
          _____,Defendants.
9207 ___ it being further agreed that installment payments be made as
          follows:_____
          _____
9208 ___ The Court finds no just reason for delay in enforcement or
          appeal of this judgment.
(   ) ___ Additional Order of court:_____
          _____
          _____

Atty No. 45853                    DATED_____,20_____
Trunkett & Trunkett, P.C.
Attorney for Plaintiff
20 N. Wacker Drive,               ENTER:
Suite 1434.
Chicago, Il. 60606
312 324.3101
                                  _____
courtnotices@trunkettlawpc.com    Judge          Judge Joyce Marie Murphy Gorm    Judge's No

                                                  FEB 21 2018

                                        Circuit Court - 1816

**EXHIBIT**

B

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Defendant's Motion to Dismiss Plaintiff's Class Action Complaint was filed electronically on this 30th Day of April, 2018. Notice of this Motion will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

**Michael Jacob Wood**
Community Lawyers Group, Ltd.
73 W. Monroe Street
Suite 502
Chicago, IL 60603
(312) 757-1880
Email:
mwood@communitylawyersgroup.com

**Sarah Margaret Barnes**
Community Lawyers Group, Ltd.
73 W Monroe Street
Suite 514
Chicago, IL 60603
(312) 757-1880
Email:
barnes.sarahmar@gmail.com

**Celetha Chatman**
Community Lawyers Group, Ltd.
73 W. Monroe Street
Suite 502
Chicago, IL 60603
(312) 757-1880
Email:
cchatman@communitylawyersgroup.com

/s/James J. Sipchen
James J. Sipchen, IL Bar No. 6226113
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312-578-7422
312-346-8242 Fax
Email: jsipchen@pretzel-stouffer.com
**Attorneys for Defendant,**
**Trunkett & Trunkett, P.C.**